IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00346-M-BM

| | | |
|---|---|---|
| ANTHONY McNEILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Anthony McNeill ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's brief [DE-10] seeking judgment in his favor, Defendant's responsive brief [DE-12] in opposition, and Plaintiff's reply brief [DE-13]. The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-10] be denied, Defendant's brief [DE-12] be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on June 17, 2013, alleging disability beginning September 6, 1999.[1] Transcript of Proceedings ("Tr.") 285-93.

---

[1] Plaintiff also filed an application for supplemental security income on June 24, 2013, which was subsequently withdrawn as discussed below. Tr. 287-93.

His claim was denied initially. Tr. 130-49, 184-91. Plaintiff filed a request for reconsideration (Tr. 196-97), and was denied upon reconsideration on February 21, 2014 (Tr. 150-83, 198-215). On March 31, 2014, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 221-228. A hearing before ALJ Mark Ziercher ("ALJ Ziercher") was held on August 1, 2014, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 44-94. On March 11, 2015, ALJ Ziercher held a supplemental hearing. Tr. 95-129. On August 3, 2015, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 19-43.

On August 24, 2015, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 15-18. On November 5, 2015, the Appeals Council denied Plaintiff's request for review. Tr. 17. Plaintiff then filed a complaint in this court seeking review of the then-final administrative decision. *See McNeill v. Berryhill*, 5:15-CV-646-KS, (E.D.N.C. filed December 9, 2015). On March 20, 2017, United States Magistrate Judge Kimberly A. Swank issued an order remanding Plaintiff's case to the Commissioner for review. Tr. 884-94. *See also McNeill v. Berryhill*, No. 5:15-CV-646-KS, 2017 WL 1050105, at *1 (E.D.N.C. Mar. 20, 2017).

On June 6, 2017, the Appeals Council remanded to the ALJ for further proceedings. Tr. 878-82. On February 13, 2018, a hearing was held before ALJ Ziercher, at which Plaintiff, represented by counsel, and a VE appeared and testified. Tr. 815-75. At that hearing the plaintiff amended his alleged onset date to December 31, 2011, and also withdrew his application for benefits under supplemental security income. Tr. 828-29, 1359.

On May 22, 2018, ALJ Ziercher issued a written decision denying Plaintiff's request for benefits. Tr. 932-58. In a letter dated June 15, 2018, Plaintiff filed written exceptions. Tr. 1495-1516. On May 15, 2019, the Appeals Council again remanded this case to an ALJ. Tr. 959-66. On April 22, 2020, a different ALJ, ALJ Vincent Hill ("ALJ Hill"), conducted a hearing, at which

2

Plaintiff, represented by counsel, and a VE, appeared and testified. Tr. 764-805. On May 11, 2020, ALJ Hill issued a written decision denying Plaintiff's request for benefits. Tr. 967-93. Plaintiff filed written exceptions to that decision on June 10, 2020, and on December 18, 2020, the Appeals Council remanded the case to the ALJ. Tr. 994-1001.

On June 1, 2021, ALJ Hill held a hearing which Plaintiff, represented by counsel, and a VE, appeared and testified (Tr. 725-63). On November 15, 2021, ALJ Hill again issued a written decision denying Plaintiff's request for benefits. Tr. 692-724. On March 1, 2023, the Appeals Council denied review (Tr. 682-84), and on March 26, 2023, granted Plaintiff a thirty-day extension to file a civil action (Tr. 673-75). Plaintiff then filed the instant complaint in this court seeking review of the final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

3

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Where the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11-CV-00054, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012) (quoting *Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

### III.  DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an

4

applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 711. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since December 31, 2011, the alleged onset date and the date last insured. Tr. 698.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: left ankle dysfunction; bilateral foot dysfunction post left big toe surgery; neuropathy; chronic pain syndrome; peripheral vascular disease ("PVD"); obesity; major depression; and generalized anxiety disorder. *Id.* The ALJ also found Plaintiff had the following non-severe impairments: diabetes mellitus; hypertension; bilateral thumb dysfunction; and lower back pain. *Id.* However,

5

at step three, the ALJ concluded these impairments both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 698-99.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself.  Tr. 699-700.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform sedentary work[2] with the following limitations:

> the claimant could never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; occasionally kneel, crouch, crawl, balance, and stoop; and no more than occasionally use foot controls with both lower extremities.  The claimant had to avoid all exposure to hazardous machinery and unprotected heights.  The claimant was capable of performing simple, routine tasks and maintaining attention, concentration, persistence, or pace to stay on task for 2-hour periods during a normal 8-hour day, as required to perform such tasks.  He required a low stress work setting, which is further defined as work that is not production pace or quota based; rather, a goal oriented job primarily dealing with things as opposed to people. The claimant could have no more than occasional interaction with the public, supervisors, and co-workers but no work with the public as a component of the job, such as cashier, sales, or negotiations; however, incidental/casual contact was not precluded.  The claimant was limited to jobs that could be performed while using a cane as a handheld assistive at all times when walking, while the free hand and arm could be used to lift or carry small items within the above limits while walking.

Tr. 701.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996).  "Occasionally" generally totals no more than about 2 hours of an 8-hour workday.  S.S.R. 96-9p, 1996 WL 374185, at *3.  "Sitting" generally totals about 6 hours of an 8-hour workday.  *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1.  *Id.*

6

entirely consistent with the medical evidence and other evidence in the record. Tr. 702.

At step four, the ALJ concluded that through the date last insured, Plaintiff was unable to perform any past relevant work. Tr. 710. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that through the date last insured, Plaintiff was capable of making an adjustment to other work that existed in significant numbers in the national economy. Tr. 710-11.

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges the following errors by the ALJ: (1) the ALJ did not explain how normal breaks accounted for [Plaintiff's] moderate limitations in concentration, persistence, and pace in his RFC; (2) the ALJ failed to adequately incorporate the use of a hand-held assistive device when assessing [Plaintiff's] RFC; and (3) the ALJ failed to define "production pace" frustrating meaningful review. Pl.'s Brief. [DE-10] at 6.[3] Each will be discussed below.

## VI. DISCUSSION

### A. Breaks to account for moderate limitations in concentration, persistence, and pace ("CPP")

Plaintiff contends that the ALJ did not explain how normal breaks of two hours accounted for [Plaintiff's] moderate limitations in concentration, persistence, and pace in his RFC. Pl.'s Brief. [DE-10] at 18. The undersigned disagrees.

Specifically, Plaintiff argues "[t]he "restriction to working in 2-hour intervals does not adequately account for a moderate limitation in the ability to stay on task, absent further explanation." Pl.'s Brief [DE-10] at 21 (quoting *Ludlow v. Comm'r, SSA*, No. SAG-15-3044, 2016

---

[3] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

U.S. Dist. LEXIS 111945, *8 (D. Md. Aug. 23, 2016)).  He also notes a Middle District of North

Carolina case which opined that:

> because, under SSA policy, customary work breaks occur approximately every two
> hours the ALJ's reference in the RFC to concentrating on task for two hours at a
> time did not provide any limitation to account for Plaintiff's moderate deficit in
> concentration persistence and pace, but instead just left in place the standard work
> schedule without explaining why Plaintiff could meet the demands of such a
> schedule despite her moderate deficit in concentration, persistence, and pace.

Pl.'s Brief [DE-10] at 21-22 (quoting *Tucker v. Saul*, No. 1:18CV481, 2019 U.S. Dist. LEXIS

131359, at *15 (M.D.N.C. Aug. 6, 2019), *rec aff'm by Tucker v. Saul*, No. 1:18CV481, 2019 U.S.

Dist. LEXIS 195630 (M.D.N.C. Aug. 26, 2019).

"A Social Security claimant's RFC represents 'the most he can still do despite his

limitations.'"  *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021)

(alterations in original) (quoting 20 C.F.R. § 416.945(a)(1)).  It is "an administrative assessment

of 'an individual's ability to do sustained work-related physical and mental activities in a work

setting on a regular and continuing basis' despite impairments and related symptoms."  *Brooks v.

Berryhill*, No. 2:16-CV-80-FL(2), 2018 WL 944382, at *3 (E.D.N.C. Jan. 23, 2018) (quoting

S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996)).  An RFC assessment must be "based on all

of the relevant medical and other evidence."  *Ward v. Colvin*, 90 F. Supp. 3d 510, 513 (E.D.N.C.

2015) (citing 20 C.F.R. § 404.1545(a)(3)).  In making this assessment, "the ALJ must consider all

of the claimant's medically determinable impairments of which the ALJ is aware, including those

not labeled severe at step two."  *Shinaberry v. Saul*, 952 F.3d 113, 119 (4th Cir. 2020) (quoting

*Monroe v. Colvin*, 826 F.3d 176, 178 (4th Cir. 2016)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and

(3) conclusion."  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22,

2019). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Monroe*, 826 F.3d at 189 (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). Where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637. Additionally, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *McNeill v. Saul*, No. 5:20-CV-244-M, 2021 WL 3701348, at *3 (E.D.N.C. June 2, 2021) (alterations in original) (quoting *Mascio*, 780 F.3d at 636).

In *Mascio*, the Fourth Circuit held "that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Specifically, the court found that "the ability to perform simple tasks differs from the ability to stay on task[,]" and "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* However, the Fourth Circuit does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry*, 952 F.3d at 121. Instead, the Fourth Circuit notes that "an ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Id.* (quoting *Mascio*, 780 F.3d at 638) (alteration in original). "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude

9

it from the hypothetical tendered to the vocational expert." *Id.* (alterations in original) (citations omitted). Yet, without such explanation by the ALJ, remand is required. *Williams v. Saul*, No. 4:20-CV-92-FL, 2021 WL 3399820, at *4 (E.D.N.C. June 16, 2021) (citing *Mascio*, 780 F.3d at 638); *see also Shannon R. v. Kijakazi*, 2022 WL 636638, at *9–10 (W.D. Va. Mar. 4, 2022) (finding that the ALJ "was required either to include specific work-related restrictions within her RFC finding to accommodate for such 'moderate' CPP limits, or to explain why such limits did not translate into [the claimant's] RFC."); and *Linda W. v. Saul*, 2021 WL 930274, at *4–6 (W.D. Va. Feb. 22, 2021) ("[T]he ALJ failed to draw an explicit conclusion or satisfactorily explain how [the claimant's] [moderate limitations in maintaining CPP] affect her ability to perform job-related tasks for a full eight-hour workday.").

"While the ability to perform simple tasks differs from the ability to stay on task," *Mascio*, 780 F.3d at 638, the undersigned has previously noted that this court and the Fourth Circuit have found that certain limitations addressing the (1) speed of production, (2) the complexity of instructions,[4] and (3) the interval of work segments can sufficiently address a claimant's ability to stay on task." *Lamm v. Kijakazi*, No. 5:22-CV-138-D, 2023 WL 6167151, at *5 (E.D.N.C. Aug. 18, 2023), *report and recommendation adopted*, No. 5:22-CV-138-D, 2023 WL 6164403 (E.D.N.C. Sept. 20, 2023); *see also Simmons v. Berryhill*, No. 5:17-CV-00004-D, 2018 WL 577243, at *7 (E.D.N.C. Jan. 10, 2018), *report and recommendation adopted*, No. 5:17-CV-4-D, 2018 WL 576845 (E.D.N.C. Jan. 26, 2018) ("[A]dditional limitations for work that involves no

---

[4] While restricting the complexity of instructions alone is not sufficient to accommodate a moderate limitation in maintaining CPP, the Fourth Circuit has considered this to be a legitimate component of an RFC that appropriately accommodates a claimant's moderate limitation in the ability to stay on task. *Sizemore*, 878 F.3d at 81 ("[D]espite [Plaintiff's] overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to stay on task while performing 'simple one, two-step tasks,' as long as he was 'working in low stress non-production jobs with no public contact.'").

quotas or fast-paced production work with uninvolved oral and written instructions in two-hour segments . . . address [claimant's] ability to stay on task."); *Sizemore v. Berryhill*, 878 F.3d 72, 79, 81 (4th Cir. 2017) (holding that limitations to completing simple one, two-step tasks in a low stress, non-production job without any fast-paced work and with no public contact were sufficient to account for moderate limitations in concentration, persistence, or pace).

Here, as discussed in greater detail under Plaintiff's third argument, the ALJ addresses the speed of production by prescribing "a low stress work setting, which is further defined as work that is not production pace or quota based." Tr. 701. The ALJ provides limitations on the complexity of the work by limiting Plaintiff to "performing simple, routine tasks" and "a goal oriented job primarily dealing with things as opposed to people." *Id.* The ALJ further clarifies that Plaintiff's work must "have no more than occasional interaction with the public, supervisors, and co-workers but no work with the public as a component of the job, such as cashier, sales, or negotiations; [but that] incidental/casual contact was not precluded." Tr. 701.

On the intervals of work, Plaintiff points to cases in this circuit, which found that two-hour intervals did not meaningfully accommodate a claimant's moderate limitation in maintaining CPP. *See* Pl.'s Brief [DE-10] at 21 (citing multiple D. Md. cases and an M.D.N.C. case). The undersigned notes that in *Tucker*, the Middle District of North Carolina case to which Plaintiff cites (Pl.'s Brief [DE-10] at 16), the ALJ found that a limitation in "concentrating on task for two hours at a time before changing tasks or being redirected" was insufficient to accommodate the claimant's moderate limitation in maintaining CPP, because it was the *only* limitation provided to accommodate this moderate limitation in maintaining CPP. *See Tucker*, 2019 U.S. Dist. LEXIS 131359, *3. The *Tucker* court contrasted its findings with *Scott v. Berryhill*, in which the court found that the ALJ had adequately accommodated the claimant's moderate limitation in

11

maintaining CPP where:

> the ALJ found that Plaintiff could stay on task for two-hour blocks of time only when performing "simple, routine, repetitive tasks . . . [in] a low stress work setting, which, in addition to the nature of the work being performed, is further defined to mean no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional work with the public as a component of the job, and no more than occasional changes in the work setting.

*Scott v. Berryhill*, 2017 U.S. Dist. LEXIS 16894, *14 (citations omitted).

The limitations in *Scott*, found to be sufficient to accommodate the claimant's moderate limitations in CPP, are almost identical to those provided in the instant case. *Cf.* Tr. 701. Similarly, other courts in this circuit, including this court, have found that limitations to two-hour work intervals can provide meaningful context for the accommodation of a moderate limitation in maintaining CPP when combined with other relevant limitations. *See Lamm*, 2023 WL 6167151, at *5; *Simmons*, 2018 WL 577243, at *7; *see also Tracy C. v. O'Malley*, No. 1:23CV198, 2024 WL 1286484, at *8 (M.D.N.C. Mar. 26, 2024) ("The ALJ also specifically found Plaintiff capable of maintaining concentration, persistence, and pace for 2-hour increments throughout the workday."); *Sandra G. v. O'Malley*, No. 1:23CV6, 2024 WL 1119550, at *5 (M.D.N.C. Mar. 14, 2024) ("Most importantly, the ALJ also specifically found Plaintiff capable of maintaining concentration, persistence, and pace for 2-hour increments throughout the workday.").

Plaintiff argues in his reply brief that unlike the undersigned's decision in *Lamm*, there are no opinions from state agency medical consultants to support the limitations prescribed by the ALJ. Pl.'s Reply Brief [DE-13] at 1-2. Plaintiff specifically notes that, here, the state agency medical consultants opined in 2014 (i) that there was "insufficient evidence to evaluate the claim" (*see* Tr. 145, 161) prior to the date last insured, and (ii) that the mental limitations provided by state agency medical consultants in 2014 were a "current evaluation" not one that related to the

period before Plaintiff's date last insured.  Pl.'s Brief [DE-13] at 1.  However, in his arguments related to Plaintiff's need for crutches, discussed below, Plaintiff cites multiple medical opinions delivered after the date last insured provide evidence of Plaintiff's need before the date last insured.

It would have been problematic if the ALJ had arbitrarily given great weight to some opinions delivered after the date last insured with respect to Plaintiff's condition at the date last insured, while rejecting others without further explanation.  However, both in the context of Plaintiff's mental limitations as well as in the context of his need for an assistive device, the ALJ considers opinions delivered after the date last insured and credits them to the extent they are consistent with evidence available before the date last insured.

Here, the ALJ gave "some weight" to the 2014 opinions of state agency medical consultants Jennifer Fulmer, Ph.D., and April L. Strobel-Nuss, Psy.D.  Tr. 706.  The ALJ readily acknowledges that these opinions were delivered in the context of Plaintiff's "Title XVI application filed on June 14, 2013" and that the "opinions do not consider [Plaintiff's] level of functioning through the date last insured."  *Id.*  The state agency medical consultants opined that Plaintiff was "capable of simple, routine, and repetitive tasks in a low stress setting with limited social demands."  Tr. 706. The ALJ accepts components of these limitations but then includes additional limitations to accommodate for Plaintiff's mental limitations at the date last insured.  *See* Tr. 704 (ALJ discussing the absence of "any regular, significant signs of mental impairment, such as cognitive deficits" in the longitudinal medical evidence prior to the date last insured).

Additionally, while the opinions of state agency medical consultants can provide one source of substantial evidence, they are not the only such source.  Here, the ALJ provides further explanation for his limitations.  He specifically notes when discussing Plaintiff's moderate limitation in CPP that while Plaintiff "alleged having trouble concentrating and following

13

instructions in his function report . . . examinations do not reveal any regular deficits in this area . . . [and he] did not display any regular cognitive deficits." Tr. 700. The ALJ also noted that Plaintiff "was alert and oriented with appropriate comprehension" at numerous medical appointments and "acknowledged being independent in his activities of daily living [in 2013]." *Id.*; *see also* Tr. 2905 (psychiatrist noting Plaintiff's complete independence with respect to his basic activities of daily living on April 29, 2013). Similarly, elsewhere in his decision, the ALJ notes that he developed Plaintiff's RFC "in considering the evidence through the date last insured showing that [Plaintiff] was alert, oriented, and cooperative with stable depression, no noted cognitive deficits, and no suicidal thoughts." Tr. 706.

Moreover, the burden of showing limitations at step three rests with the Plaintiff, not the ALJ. To the extent that Plaintiff believed that greater mental restrictions were required in the RFC, he had the responsibility to produce the relevant evidence supporting this.

Contrary to Plaintiff's assertion, the ALJ here appropriately accounts for Plaintiff's moderate CPP impairment in the RFC and "reading the ALJ's decision as a whole, the ALJ built the requisite, accurate and logical bridge from the evidence in the record to his finding as to [P]laintiff's residual functional capacity." *Emanuel v. Saul*, No. 7:19-CV-202-FL, 2021 WL 1217309, at *4 (E.D.N.C. Mar. 31, 2021). Accordingly, the court finds that remand is not required for this issue.

**B.  Use of an assistive device**

Plaintiff contends that the ALJ failed to adequately incorporate the use of a hand-held assistive device when assessing [Plaintiff's] RFC. Pl.'s Brief. [DE-10] at 6. The undersigned disagrees.

In assessing a claimant's RFC, an "ALJ must consider the impact of a 'medically required'

14

hand-held assistive device on a claimant's functional capacity." *Williams v. Berryhill*, No. 5:17-CV-408-D, 2018 WL 4576781, at *3 (E.D.N.C. May 17, 2018) (citing *Taylor v. Berryhill*, No. 5:17-CV-78-FL, 2018 WL 852396, at *3 (E.D.N.C. Jan. 10, 2018); S.S.R. 96-9p). "The requirement to use a hand-held assistive device may . . . impact . . . [an] individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00J4. To determine whether a hand-held assistive device is required, an ALJ must follow the guidance set forth in S.S.R. 96-9p. In relevant part, S.S.R. 96-9p provides that for an ALJ "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." S.S.R. 96-9p.

Here, the ALJ found that Plaintiff "was limited to jobs that could be performed while using a cane as a handheld assistive device at all times when walking while the free hand and arm could be used to lift or carry small items within the above limits while walking." Tr. 701.

Plaintiff faults the ALJ for not explaining why "the cane was not medically necessary for balancing and standing." Tr. 24. Plaintiff also notes that he testified at the 2021 administrative hearing that was using "bilateral crutches daily" since December 2011 and that "[e]very now and then [he uses] a cane, but cannot "balance [himself with it] to go." *Id.* (quoting Tr. 743). He then cites multiple medical opinions discussing his need for a cane or crutches. Def.'s Brief [DE-10] at 24.

The ALJ expressly found in his decision that Plaintiff required crutches for ambulation as of May 31, 2013, based on the recommendation of Plaintiff's podiatrist. Tr. 703. However, the

15

ALJ also repeatedly notes that at the administrative hearing in 2014, Plaintiff testified that "he only needed the crutches for 6 to 9 months after his 2006 surgery and then did not start using crutches again until 2013." Tr. 702; *see also* Tr. 58 (Plaintiff noting in 2014 that he used crutches "six or nine months" after his foot surgery, and the "didn't use them after that" and then the doctor have them to Plaintiff again "last year," *i.e.*, 2013). None of the medical records opining on Plaintiff's need for a cane for standing or balancing or Plaintiff's need for crutches were from before Plaintiff's date last insured.[5] While certain medical opinions seek to speak retrospectively to Plaintiff's need for crutches on his date last insured, the relevant opinions are delivered years after the fact by medical providers who were not treating Plaintiff at the time (*see* Tr. 705-09) and appear to be contradicted by Plaintiff's own testimony in 2014 that he only needed the crutches for 6 to 9 months after his 2006 surgery and then did not start using crutches again until 2013. Tr. 709. The ALJ also notes that the "available medical records through the date last insured showing 5/5 strength outside of the left great toe, no sensory deficits or gross neurological deficits, no significant joint deformities or edema, and no regular use of an assistive device for ambulation." *Id.*

Accordingly, the undersigned finds that the ALJ had substantial evidence, not least of which was Plaintiff's own testimony from an earlier administrative hearing, to support his finding that Plaintiff only needed a cane for walking as of the date last insured in 2011.

With respect to Plaintiff's argument that "[t]he ALJ failed to explain why the cane was not

---

[5] With respect to evidence prior to the date last insured, the ALJ gives some weight to the 2002 opinion from Daniel Laut, DPM, who opined that Plaintiff "should avoid extended walking and standing and would be bothered by squatting type activity." Tr. 705. The ALJ gave this opinion only some weight because it was "rather vague, failing to set forth specific work restrictions in vocationally relevant terms" and because it was "based on [Plaintiff's] presentation in 2002, well before the amended alleged onset date [in 2011]." In any event, this opinion does not prescribe the use of an assistive device.

medically necessary for balancing and standing" (Pl.'s Brief [10] at 25), as noted above, Plaintiff had the burden at step three of the sequential evaluation process of showing why greater limitations were necessary. To the extent there were any material inconsistencies in the record, the ALJ must reconcile these in his discussion. S.S.R. 96-8p (noting that an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."). However, Plaintiff has not pointed to any material inconsistencies from the record that the ALJ did not address and resolve in his decision. Accordingly, the undersigned does not find that remand is necessary for this issue.

## C.    Definition of production pace

Plaintiff contends that the ALJ failed to define "production pace" frustrating meaningful review. Pl.'s Brief. [DE-10] at 6. Specifically, Plaintiff argues that meaningful review is frustrated because "the ALJ never explained what he meant by 'production pace' during the hearing when questioning the VE, or in the RFC discussion, or anywhere else in his decision." Pl.'s Brief [DE-10] at 28. The undersigned disagrees.

In *Thomas v. Berryhill*, the Fourth Circuit held that the ALJ "did not give us enough information to understand what [requiring a production rate or demand pace] mean[s]." 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019). Similarly, the Fourth Circuit in *Perry v. Berryhill* held that "the ALJ offered no explanation of her own for what she meant when she used the phrase 'non-production oriented work setting' in assessing Perry's residual functional capacity." 765 Fed.Appx. 869, 871 (4th Cir. 2019). In *Sizemore*, 878 F.3d at 80-81, the Fourth Circuit upheld an ALJ's finding that, "despite [the claimant's] overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to stay on task while performing 'simple one, two-step tasks,' as long as he was 'working in low stress non-production jobs with no

17

public contact.'" 878 F.3d at 81.

The *Perry* court distinguished the fact pattern in *Thomas* and its own from the situation in *Sizemore* by noting that "the ALJ in *Sizemore* provided additional context [to the limitation of 'non-production jobs'], explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in concentration, persistence and pace." 765 F. App'x at 872 n.1 (quoting *Sizemore,* 878 F.3d at 79). "Those descriptors helped to explain the restriction intended by the ALJ, and allowed [the *Sizemore* court] to evaluate whether that restriction adequately accounted for the claimant's limitations." *Perry*, 765 F. App'x at 872.

Here, the ALJ adds context through descriptors similar to those in *Sizemore*. For example, the ALJ limits Plaintiff to work that is "not production pace," in the context of "a low stress working setting." Tr. 701; *Cf. Sizemore,* 878 F.3d at 79. The ALJ provides further detail on the production pace by linking it with a requirement that Plaintiff's work "not [be] . . . quota based." Tr. 701. A court in this circuit has noted that "[n]umerous courts . . . have held a limitation on 'production rate or pace' combined with a prohibition on quotas provides enough detail for judicial review." *Andrew E. v. Kijakazi*, No. CV 22-1348-BAH, 2023 WL 144763, at *4 (D. Md. Jan. 10, 2023) (collecting cases). Additionally, this court has previously upheld very similar limitations. *McPherson v. Kijakazi*, No. 5:22-CV-00375-M, 2023 WL 10352445, at *11 (E.D.N.C. July 31, 2023), *report and recommendation adopted sub nom. McPherson v. O'Malley*, No. 5:22-CV-00375-M-RN, 2024 WL 841207 (E.D.N.C. Feb. 28, 2024) (upholding accommodation of a moderate limitation in CPP by limiting the claimant to "simple, routine, repetitive tasks that she can perform in two-hour periods[, with the] phrase 'non-production pace' [being used] to eliminate quota-based work and require a low stress work setting."); *Simmons*, 2018 WL 577243, at *8

18

(performing judicial review and upholding limitations that included "occupations that would not require completion of a fixed number of production quotas or the performance of fast-paced, assembly work.").

Similar to the limitations in *Sizemore*, the ALJ also limits the amount of public contact that Plaintiff can have in such job to accommodate his moderate limitation in maintaining CPP. Tr. 701. Finally, the ALJ provides details beyond those provided in *Sizemore* by noting that the work must be a "goal-oriented job dealing with things." *Id.* Accordingly, the undersigned finds that the ALJ has provided sufficient context for the prohibition of "production pace or quota based" work to allow judicial review.

Plaintiff notes that at least one court in this circuit has found that one of the jobs provided by the VE, the job of "sorter" DOT #521.687-086 (Tr. 756), is in conflict with a limitation to work that is not at a production pace. Pl.'s Brief [DE-10] at 30 (citing *Coleman v. Berryhill,* No. 1:16-3465-TMC-SVH, 2017 U.S. Dist. LEXIS 219557, at *52-56 (D.S.C. June 29, 2017) *aff'm by Coleman v. Berryhill*, Civil Action No. 1:16-3465-TMC, 2018 U.S. Dist. LEXIS 46964 (D.S.C. Mar. 22, 2018)). Even if the ALJ did err on this point, the remaining two occupations discussed by the VE at the hearing, "final assembler" DOT #713.687-018 and "button reclaimer" DOT #734.687-042 (*see* Tr. 711), makes this error harmless. According to the VE, there are approximately 24,000 jobs nationally for the occupation "final assembler" DOT #713.687-018 and approximately 11,000 jobs nationally for the occupation "button reclaimer" DOT #734.687-042. Tr. 756. These jobs, available in these numbers, would be sufficient to uphold the determination of non-disability. Tr. 32, 64. *See, e.g.*, *Dixon v. Saul*, No. 4:20-CV-53-FL, 2021 WL 826776, at *11 (E.D.N.C. Jan. 26, 2021) (finding 5,600 jobs in the national economy sufficient); *Spruill v. Astrue*, No. 4:10-CV-00178-FL, 2011 WL 5325590, at *8 (E.D.N.C. Oct. 13, 2011) (finding 3,259

19

positions available in the national economy sufficient); *Hodges v. Apfel*, No. 99-2265, 2000 WL 121251, at *1 (4th Cir. Jan. 28, 2000) (finding as few as 153 jobs available in the region sufficient); *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (finding as few as 110 jobs available in the region sufficient). For the foregoing reasons, remand is not recommended on this issue.

## VII.  CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's Brief [DE-10] be DENIED, Defendant's Brief [DE-12] be ALLOWED, and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel.  Each party shall have until **September 2, 2024**, to file written objections to this Memorandum and Recommendation.  The presiding district judge must conduct his own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions.  *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.  Any response to objections shall be filed by **the earlier of 14 days from the filing of the objections or September 9, 2024**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review.  In addition, the party's failure to file written**

objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.  *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 19th day of August, 2024.

_____
Brian S. Meyers
United States Magistrate Judge